The Honorable Tommy Dickinson State Representative 711 Hodges Street Newport, AR 72112-2709
Dear Representative Dickinson:
I am writing in response to your request for my opinion on the following questions:
 1. With regard to A.C.A. 14-124-102, which states the Board of Directors or Commissioners of the levee districts are to call a special meeting to appoint a landowner of a county or part of a county in the levee district to assess the annual benefit accruing by reason of levee protection to the lands, town lots, rural lots, industrial lots, railroads, tram roads, telegraph/telephone lines, and electric high power lines in his/her county or part of his/her county, in books to be furnished by the levee district for that purpose; does the levee district have the authority to designate the assessor of the county as the appraiser for this type of property for levee taxes?
 2. With regard to A.C.A. 14-124-102 and 14-124-108, there is no mentioning of any assessment of any improvements to the land being assessed, except railroads, telegraph/telephone lines, electric power lines, rural electrification lines or industrial plants; would the levee district be in a sound legal position by assessing homes, commercial buildings, farm shops or any other improvement to the lands not mentioned within the above named statutes?
 3. If the answer to the above questions is "yes," would the millage rollbacks and property tax caps mentioned within Amendments 59 and 79 be applied for taxpayer relief?
RESPONSE
With respect to your first question, although such dual service is not expressly prohibited in the Code, various ethical proscriptions might apply under particular circumstances. Only a finder of fact could determine the propriety of such dual service in any particular case. I can only opine generally that a county assessor would never be obligated to accept such an appointment, which would involve duties totally unrelated to his official duties as county assessor, and that the assessor should scrupulously avoid using any county resources in his possible service to the levee district. With respect to your second question, I believe all the varieties of property you recite are subject to levee-district reassessment. I believe the answer to your third question is "no."
Question 1: With regard to A.C.A. 14-124-102, which states theBoard of Directors or Commissioners of the levee districts are tocall a special meeting to appoint a landowner of a county or partof a county in the levee district to assess the annual benefitaccruing by reason of levee protection to the lands, town lots,rural lots, industrial lots, railroads, tram roads,telegraph/telephone lines, and electric high power lines inhis/her county or part of his/her county, in books to befurnished by the levee district for that purpose; does the leveedistrict have the authority to designate the assessor of thecounty as the appraiser for this type of property for leveetaxes?
Although the Code contains no express prohibition against such dual service, only a finder of fact could determine its propriety in any particular case.
In analyzing dual office-holding questions, there are three categories of unlawful conflicts of interest: a constitutional conflict, a statutory conflict, and a conflict created by offices having incompatible duties. Byrd v. State, 240 Ark. 743,402 S.W.2d 121 (1966). I have found no provision of the constitution that prohibits the holding of the simultaneous positions listed. However, several statutes potentially bear on this question.
Title 14, chapter 124 of the Arkansas Code (Repl. 1998) sets forth a method of assessment and collection of taxes in levee improvement districts comprising more than one county. Section14-124-102 provides:
 The board of directors or commissioners of levee districts embracing parts of more than one (1) county, at an annual meeting or at a special meeting called for the purpose, shall appoint a landowner in each county or part of a county in the levee district who shall assess the annual benefit accruing by reason of levee protection to the lands, town lots, suburban lots, rural lots, industrial plants, railroads, tramroads, telegraph and telephone lines, electric high power lines in his county or part of a county in books to be furnished by the levee district for that purpose.
In interpreting this statute, I am guided by the principle that legislation must be construed just as it reads, giving the words their ordinary and usually accepted meaning in common language.Edwards v. State, 347 Ark. 364, 64 S.W.3d 706 (2002). On its face, this statute provides that any "landowner" in a county or part of a county contained within a levee district may be appointed to assess property in the county or part of a county in which he owns land. Read in isolation, then, this statute would appear to authorize a county assessor to serve as a levee-district assessor so long as he meets the conditions of land ownership just recited.[1]
However, in considering the effect of this statute, I must consider the possible application of several other statutes that specifically address the ethical obligations of county officials.[2] Section 14-14-1202 of the Code (Supp. 2005) provides in pertinent part:
 (b)(1) OFFICERS AND EMPLOYEES OF COUNTY GOVERNMENT DEFINED. For purposes of this section, officers . . . of county government shall include:
 (A)(i) All elected county and township officers;
 * * *
 (c)(1) RULES OF CONDUCT. No officer . . . of county government shall:
 (A)(i) Be interested, either directly or indirectly, in any contract or transaction made,
authorized, or entered into on behalf of the county or an entity created by the county, or accept or receive any property, money, or other valuable thing for his or her use or benefit on account of, connected with, or growing out of any contract or transaction of a county.
(Emphasis added.) As an elected official, a county assessor is clearly an "officer of county government" as defined in this statute. At issue, then, is whether his appointment to serve as a levee-district assessor, presumably for compensation, might be characterized as a "contract or transaction made . . . on behalf of . . . an entity created by the county." If so, A.C.A. §14-14-1202 would appear to preclude the appointment.
Title 14, chapter 123, subchapter 2 of the Code (Repl. 1998) addresses the establishment of levee districts. Section14-123-201 provides that the county court in each county may divide into one or more districts territory within the county subject to flooding. Section 14-123-204 authorizes the levee districts of two or more counties to consolidate their separate districts into one, with the directors of the former districts comprising the board of the newly formed district.
A levee district located in a single county would thus indeed appear to be "an entity created by the county," meaning that A.C.A. § 14-14-1202 might well preclude the elected assessor in that county from simultaneously serving as a paid levee-district assessor. However, the same conclusion may well not apply when the levee-district spans more than one county, as is apparently the case in the district referenced in your request. In Ark. Op. Att'y Gen. No. 2004-210, relying upon my predecessor's opinion in Ark. Op. Att'y Gen. No. 94-030, I concluded that an entity serving various counties, not being merely an administrative arm of a particular political subdivision, is not subject to the provisions of A.C.A. § 14-14-1202. Although only a finder of fact acquainted with all of the pertinent circumstances could make any final determination, this same conclusion may well apply in the present case. In this regard, I will note that while a levee-district assessor is appointed to assess only the property in the county in which he owns land, A.C.A. § 14-124-102, he further sits on the board of assessment and equalization charged with equalizing assessments throughout the district, see A.C.A. §§ 14-124-105 and -106 (Repl. 1998) — an enterprise that has a clearly regional focus. It may well be, then, that the dual service at issue in your request would not be barred pursuant to A.C.A. § 14-14-1202.
Also worthy of mention with regard to dual service is A.C.A. §21-8-304(a) (Repl. 2004), which provides:
 No public official or state employee shall use or attempt to use his or her official position to secure special privileges or exemption for himself or herself or his or her spouse, child, parents, or other persons standing in the first degree of relationship, or for those with whom he or she has a substantial financial relationship that is not available to others except as may be otherwise provided by law.
Assuming a county assessor would be fairly considered along with any other landowner-applicant by the board of commissioners in selecting a levee-district assessor, this statute would not appear to apply. However, only a trier of fact could determine in any particular case whether a county assessor had made and whether the board had acceded to any undue use of the county assessor's position to solicit an offer to serve as a levee-district assessor.
Even in the absence of any constitutional or statutory proscription, dual service is sometimes prohibited at common law pursuant to the so-called "incompatibility" doctrine. The doctrine is discussed generally at 67 C.J.S. Officers § 27(a) as follows:
 A public officer is . . . prohibited from holding two incompatible offices at the same time, as a matter of public policy, in order to assure not only the actuality of undivided loyalty, but also the appearance thereof. Even though specific constitutional and statutory provisions furnish no bar to the holding of particular offices or positions at the same time, the common law must be considered in determining whether there is any incompatibility therein. . . .
 * * *
 Where the functions of two offices are inconsistent, they are regarded as incompatible, but there is no incompatibility of office except as prescribed by the constitution or laws enacted pursuant thereto, or in cases where there is incompatibility of duties in the different positions. The question of incompatibility of necessity depends on the circumstances of the individual case. . . .
 * * *
 The inconsistency of functions rendering offices incompatible lies in a conflict of interest. . . . In this connection the issue is whether the occupancy of both offices by the same person is detrimental to the public interest or whether the performance of duties of one interferes with the performance of those of the other. Accordingly, a conflict of interest exists where one office is subordinate to the other, and subject in some degree to the supervisory power of its incumbent, or where the incumbent of one of the offices has the power of appointment as to the other office, or has the power to remove the incumbent of the other or to punish the other. Furthermore, a conflict of interest may be demonstrated by the power to regulate the compensation of the other, or to audit his accounts.
(Footnotes omitted.) See also Thompson v. Roberts,333 Ark. 544, 970 S.W.2d 239 (1998) (positions of mayor and city bookkeeper incompatible); Byrd v. State, supra (simultaneous holding of positions as county election commissioner, school board member and member of county board of education violates incompatibility doctrine); Tappan v. Helena Federal Savings andLoan Ass'n., 193 Ark. 1023, 104 S.W.2d 458 (1937) (positions of city council member and improvement district board member incompatible); Ark. Op. Att'y Gen. No. 98-110 (simultaneous service as county equalization board member and tax assessor would violate incompatibility doctrine); and Ark. Op. Att'y Gen.97-143 (positions of county equalization board member and member of county quorum court incompatible).
As noted in the excerpt just quoted, determining whether two offices are incompatible will always involve undertaking a factual inquiry, which I am not authorized or equipped to make. However, I can opine that the offices of county assessor and levee-district assessor as described in the Code appear to be entirely independent of one another and do not appear to involve the type of prohibited connections or incompatible duties discussed in the decided Arkansas cases. As previously noted, the county assessor is statutorily charged with periodically assessing the underlying value of property, whereas a levee-district assessor is statutorily charged only with assessing the increase in property value attributable to levee construction and maintenance. These appear to be discrete undertakings that the respective officers can perform independently,[3] thus potentially minimizing the possibility that a finder of fact would conclude that the offices are incompatible.
The distinction in the duties of these two offices is reflected in the following passage from Long Prairie Levee District v.Wall, 227 Ark. 305, 308, 298 S.W.2d 52 (1957):
 It is plain that this [timber assessment] statute[4] was intended to apply to the assessment of property for general taxes rather than to an assessment of benefits by an improvement district. The statute refers to the nonpayment of "taxes," to mineral rights "forfeited" for such nonpayment, and to the "certification" of those rights. This language is appropriate to the field of general taxation but not to that of improvement district assessments. The duty to make the separate [timber] assessment is imposed by the statute upon the county assessor, who ordinarily has nothing to do with improvement district assessments and does not even have custody of the books in which the assessed benefits are recorded. The legislature certainly did not mean to impose upon the county assessor a duty which that officer would be altogether unable to perform.
Just as this passage makes clear that a county assessor has no official duties relating to improvement-district assessments, he likewise has no official duties relating to levee-district assessments.
Finally, given the differences in functions and duties between the activities of a county assessor and those of a levee-district assessor, I must stress again that a county assessor would not be obliged to accept an appointment as a levee-district assessor even if such an appointment were deemed permissible and were offered. Performing levee-district assessments is simply not a duty with which a county assessor is charged in his capacity as an elective officer, nor is it a duty to which he may devote the resources of his elective office should he be appointed as a levee-district assessor.
Question 2: With regard to A.C.A. 14-124-102 and 14-124-108,there is no mentioning of any assessment of any improvements tothe land being assessed, except railroads, telegraph/telephonelines, electric power lines, rural electrification lines orindustrial plants; would the levee district be in a sound legalposition by assessing homes, commercial buildings, farm shops orany other improvement to the lands not mentioned within the abovenamed statutes?
In my opinion, an assessment district should assess all the varieties of property listed in your question.
As an initial matter, I must respectfully disagree with your characterization of the two referenced statutes with respect to the varieties of property subject to assessment. As reflected in my response to your first question, A.C.A. § 14-124-102 mandates the annual assessment of "benefits accruing by reason of levee protection to the lands, town lots, suburban lots, rural lots,
industrial plants, railroads, tram roads, telegraph and telephone lines, [and] electric high power lines" in the district. (Emphasis added.) In my opinion, railroads, tram roads, telegraph and telephone lines, and electric high power lines are listed not as types of improvements but instead as categories of property, along with rural, city, town, and village property that may increase in value as a result of the protection offered by the levee district and thus types of property to be assessed. I further believe that the terms "the lands, town lots, suburban lots, and rural lots" are broad enough to include the homes, commercial buildings, farm shops and the like about which you asked. Moreover, the same conclusion applies with respect to A.C.A. § 14-124-108, which provides:
 (a) The assessors for the several counties and the board of assessment and equalization may adopt such units for assessment purposes as they deem practicable and advisable, such as the acre for rural lands; the lot for real estate in cities, towns, and villages; the plant and the land on which it is located for industrial properties; and the mile for railroads, tramroads, telegraph and telephone lines, electric high power lines, and rural electrification lines.
 (b) They shall assess the properties in each class
according to the special benefits which accrue by reason of levee protection to property of the character embraced in the particular class.
(Emphases added.) Again, I believe the highlighted passages reflect a clear legislative intent to subject to assessment all of the properties recited in your question.
Question 3: If the answer to the above questions is "yes," wouldthe millage rollbacks and property tax caps mentioned withinAmendments 59 and 79 be applied for taxpayer relief?
In my opinion, the answer to this question is "no."
Both Amendments 59 and 79 deal exclusively with property tax relief following a periodic countywide reappraisal of property values, which involves an assessment of the underlying value of property, not an assessment of the increase in value resulting from a discrete activity such as levee-district improvements.See Ark. Const. art. 16, § 14(a) and Ark. Const. amend. 79 § 1(a). Neither amendment addresses the increase in property values resulting from the activities of a levee district, and none of the proceeds realized from the countywide reappraisal support the activities of a levee district. The level of taxation following a levee-district reassessment is controlled exclusively by the statutory scheme discussed in my response to your previous questions. No provision of the Code provides for either a millage rollback or a tax cap in the wake of a levee-district reassessment.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] Prior to the enactment of Acts 1999, No. 933, § 1, I would probably have drawn a different conclusion regarding this issue. Act 933 repealed A.C.A. § 26-26-501, which mandated, interalia, that "[t]he county assessor shall devote his entire time to the duties of his office" — a provision that would appear to foreclose any such dual service.
[2] It is an accepted rule of statutory construction that a general statute normally does not apply where there is a specific statute governing a particular subject matter. Donoho v.Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994). In my opinion, an express ethical proscription applicable to county officers would trump a grant of authority generally applicable to "landowners" in a levee district.
[3] As noted above, the distinction between the duties of a county assessor and those of a levee-district assessors renders it crucial that the county assessor avoid using the resources of his office if he is also selected to serve as a levee-district assessor. Again, given the factual nature of the inquiry, I am not inclined to opine categorically that such dual service would be permissible in any given case.
[4] The referenced statute is Ark. Stat. Ann. § 84-203, currently codified at A.C.A. § 26-26-1109, which addresses the assessment of timber rights.